*273 Battle, J.
I concur in the decision that the prisoner is not entitled, either to a veni/re de novo or to an arrest of judgment. Upon one only of the questions discussed by my brother Peak-soN, do my views differ so much from his, as to require from me a separate opinion. Upon the maxim of “falsum m vmo falsum m omnibus,” I think that the charge of the presiding Judge in the court below was in precise accordance with the decision of this Court at June Term, 1828, in the case of the State v. Jim, 1 Dev. Rep. 508, and that we are not called upon to question the propriety of that decision in the slightest degree. As a solemn adjudication of this Court, it demands my respect: as the. announcement of a safe and valuable rule of evidence for the guidance of juries, it receives my approbation. I am aware that, practically, its observance by the jury cannot always be enforced by the court: for instance, if a witness testifying for a prisoner, were guilty of the most apparent perjury in a material part of his testimony, and the court should instruct the j ury in the strongest manner that the testimony of the witness was to be disregarded altogether, there would be no way of correcting a wilful error committed by the jury in acquitting the prisoner in defiance of the charge ; but the doctrine, that a rule, whose general operation is beneficial, is to be discarded because it may sometimes be ineffectual, or even baneful, has long since been exploded. The argument, if available to destroy the present rule, will be equally so against that which makes it the duty of the court, and not the jury, to decide questions of law in a criminal case. "We gave our sanction to that important rule in the case of the State v. Peace, 1 Jones’ Rep. 251, and yet it is well known that juries will sometimes bring in verdicts of acquittal, in capital cases, without any sufficient evidence to support them, and against the most decided instructions from the court. Thinking, as I do, that the maxim of “ falsum i/n uno falsum in omnibus ” affords a most salutary conservative rule of evidence, especially in capital trials, I will proceed to show that it was established in Jim's case, just as it was understood and applied by his Honor who presided at the trial of the case which is now before us.
*274 Jim, a slave, was indicted, under an act of Assembly which made it a capital felony for a colored person to assault a white female, with the intent to commit a rape upon her. After a former trial and conviction, a venire de novo was awarded to him, and he was put upon his trial again, when the only witness called to prove the assault, was a female, whose moral character was shown to be bad : to impeach her still further, a gentleman of the bar, who had been present at the former trial, was introduced as-a witness, and stated several material particulars in which her testimony varied, on the latter, from what it had been on the former examination. The Judge, in commenting upon her testimony, and stating what degree of credit ought to be attached to it, told the jury that “ they might, exercising a sound discretion, reject part of a witness’ testimony, which they did not believe, and act upon such part as they did believe.” The prisoner was found guilty, and moved for a new trial, assigning as a ground for it, error in the above instruction. This motion was overruled and judgment pronounced, from which he appealed. Now, in order to understand the decision of this Court, it is necessary that we should ascertain the precise point ruled by the court below. The question before the court and jury was whether the testimony of the female witness was at all to be relied on for any purpose ? The charge of his Honor assumed that a material part of it might be false and another part true. False and true when ? Of course, on the trial then in progress : for if the Judge had adverted to the fact that the false part of it had been given on the former trial, and that all she swore on the latter was true, it would not have admitted of the distinction of parts. The important enquiry for both the court and the jury was, “ is she speaking the truth now ? is she to be believed now— on this trial ?” The proof of false swearing on a former occasion, if found, was assumed as proof of false swearing, at least in part, on the latter. It was on this supposition that the charge was given. It applied to the belief of the jury as to the testimony as they heard it, and they were told, in effect, that though they might think the witness had then perjured *275 herself in stating some material fact, yet they were at liberty to rely on other material facts testified to by her. I think it almost certain that the counsel, who acted as amicus curias in this Court, so understood the charge. Had he referred to a perj ury, committed by the witness on a former trial, in court, or before the grand jury, or before an examining magistrate, he would no doubt have distinctly so stated : instead thereof “he stated the reason of the rule to be, that the jury had quoad the particular case, judicially ascertained the corruption of the witness, and therefore, as to that case, the result was the same as in all other cases where the corruption was judicially ascertained by a conviction for perjury.” Now that he-meant that the jury must find the perjury to have been committed on the trial then going on, and not on any former occasion in the previous stages of the cause, is manifest from the consideration that the first position is a reasonable and proper ' one, and the other, in most cases, involves an absurdity. There are various reasons which may induce a jury to come to a conclusion that a witness has perjured himself in his testimony before them : among these reasons one is, that he has sworn differently on a former tidal of the case, and another that-he has made contradictory statements out of court: if, in any way, the jury believe him corrupt, they ought not to rely on him. In a capital case they ought not to put a man’s life in peril by attempting the difficult operation of separating the sound from the unsound part of a corrupt witness’ testimony. The first position then, is but the establishment of a safe and conservative rule of evidence of great value. But the second, as I have said, in most cases involves an absurdity. If the jury believe the witness swore willfully false on a former occasion, they must come to that conclusion by finding that she swore truly on the trial, and then they are bound to acquit the prisoner just at the moment, when by believing the testimony, they are convinced of his guilt.
Erom these views I am satisfied that the amicus curies understood the charge of the Judge in Jim’s case as I do: if so, it cannot be denied that both Tatloe, O. J., and HeNdeesoN J., *276 wbo delivered opinions in this Court, may have understood it in the same light, and thereupon intended to lay down the rule in the very terms for which I am contending. The following language extracted from the opinions of these eminent Judges, see ms to me to be hardly susceptible of any other interpretation : “ I believe that all the writers on the law of evidence lay down the rule, that a witness who gives false testimony as to one particular, cannot be credited as to any, the maxim being falsum i/n uno falsum m onvnibus. And it is very reasonable that it should be so ; for the general presumption that a witness will tell the truth, is overthrown when it is shown that he is capable of perjury.” !< I can see no difference in principle, and if so, there should be none in practice, between a person heretofore convicted, and one who stands convicted before the jury in the case they are trying. Hence the maxim falsum in uno falsum in omnibus.” These expressions seem to me to point directly to the testimony given on the trial, and apply to its falsity then and not elsewhere or otherwise. So understood, they established a rule under which I acted while I had the honor of a seat on the superior court bench— a rule of which the Judge who presided at the trial of the case which we are now considering, gave the prisoner the benefit, and for refusing to extend which, as required by his counsel, the prisoner has no just cause of complaint.
Per OcjRiAM. . ' Judgment affirmed.